LESTER SIMON, Plaintiff, *v.* JOSEPH BURKE, Defendant.

Supreme Court, Special Term, Erie County, September 29, 1947.

*Israel Rumizen* for plaintiff.

*Buecking & Sengbusch* for defendant.

*Raichle, Tucker & Moore* for Gertrude A. Moore, as executrix of James O. Moore, deceased.

PIPER, J. Two motions are before me for determination, which should, in my opinion, be decided together. The defendant in this action moved for an order dismissing plaintiff's complaint and fixing a definite date for him to make proof of his counterclaim. The plaintiff moved for an order substituting another attorney in place of James O. Moore, deceased, the attorney of record, and for an order directing the executrix of the last will and testament of James O. Moore, deceased, " to deliver all the pleadings, documents and papers in this action " to the substituted attorney so that the action can be tried. Counsel for the executrix takes the position that his client has a retaining lien for the reasonable value of the services rendered by James O. Moore, deceased, in this action and for other services rendered to this plaintiff in other matters and that she should not be required to turn over any papers until

all those services are paid for or security given to assure her that such payment will be made.

It appears that in the year 1946 and up to and including February 20, 1947, James O. Moore, now deceased, performed legal services for plaintiff in this action and at least two other actions in which this plaintiff was also plaintiff. In two actions in which plaintiff brought action against his brother and one or more other defendants, Mr. Moore effected a settlement which he thought was agreed to by plaintiff, but plaintiff contended that he had not agreed. On February 15, 1947, Mr. Moore moved before me for an order relieving him as attorney for plaintiff in those two actions, because of his disagreement with his client, and fixing the value of his services.

That motion was not determined at the time of Mr. Moore's death, February 24, 1947, and the part of the relief asked for "relieving the petitioner as attorney for the plaintiff" became academic by reason of his death. It was my opinion that it was necessary to take proof as to the value of the services rendered in those actions by Mr. Moore and that the executrix would have to be substituted as the petitioner before such proof could be taken, and no substitution having been made, that part of the application was never decided.

There can be no question as to the right of the defendant in this action to an order fixing a time for the plaintiff to serve his amended complaint, and providing that upon his failure to serve the pleading, plaintiff's cause of action be dismissed and defendant be permitted to prove his counterclaim. Plaintiff argues that in order to draft the pleading he must have the papers in the hands of the executor, and consequently he is entitled to the order he asks for in his motion papers. The contention of the executor has been stated above.

In *Matter of Sebring* (238 App. Div. 281, 285–286) Mr. Justice Edgcomb, writing for the court, defined the rights of an attorney generally as follows:

"The common law gives two kinds of liens to an attorney: (1) A general, possessory lien, commonly called a retaining lien, which affords to an attorney the right to retain all papers and property of his client in his possession, until his entire claim for services has been discharged; (2) a particular lien upon a specific fund or judgment, which has been recovered through the efforts of the attorney, for his compensation in that individual action or proceeding, and which is denominated a charging lien. (*Robinson* v. *Rogers,* 237 N. Y. 467, 470; *Goodrich* v. *McDonald,* 112 id. 157, 162, 163; *Matter of Heinsheimer,* 214 id. 361, 364; *Matter of Rieser,* 137 App. Div. 177, 185, 186.)

" The two liens are entirely separate and distinct. The retaining lien attaches generally to papers, money and property belonging to a client which come into the hands of the attorney during the course of his employment (*Matter of Knapp,* 85 N. Y. 284; *Matter of Hollins,* 197 id. 361, 364), and continues until the attorney's charges for all services which he has performed for his client have been paid, not only those pertaining to the matters relating to the papers or property in his hands at the time, but also for any balance due for other professional services. The extent of the lien is measured by the value of the services. (*Matter of Babcock,* 230 App. Div. 323, 326; *Ward* v. *Craig,* 87 N. Y. 550, 561; *Bowling Green Sav. Bank* v. *Todd,* 52 id. 489; *Mathot* v. *Triebel,* 98 App. Div. 328, 330; *Maxwell* v. *Cottle,* 72 Hun, 529.)

" The general or retaining lien is dependent upon possession, and does not attach to property which is not in the hands of the attorney. (*Robinson* v. *Rogers,* 237 N. Y. 467, 470; *Matter of Heinsheimer,* 214 id. 361, 364.) Its very name, ' retaining lien ', indicates that the property must be in the attorney's possession, or else he could not ' retain ' it. He keeps the property as security for his bill against his client until his claim is satisfied. It confers no further rights upon the attorney, and cannot be actively enforced.

" The charging lien binds the award or judgment which has been obtained through the attorney's efforts, and prevents a dishonest client from receiving the fruits of his attorney's labors without compensating him for his services. This lien does not depend upon possession. It is good no matter in whose hands the decision, award or judgment may be."

Both of these liens were known to the common law and were created for the purpose of protecting an attorney from a client who refused to pay for the services rendered in his behalf. The charging lien has become statutory in this State. (Judiciary Law, § 475.) The retaining lien is still to be determined under the common-law rules.

We are here concerned with the retaining lien only, as that is the right asserted on behalf of the executor of the deceased attorney. The plaintiff contends that although Mr. Moore, in his lifetime, may have been entitled to the lien, it was a personal right and does not survive for the benefit of his estate.

The law is well settled in this State that a charging lien survives the death of the attorney, and although the contract of retainer is at an end, his personal representative may collect " the reasonable value of the services " performed by the

deceased attorney, not exceeding, however, any sum fixed in a contract of retainer. (*Sargent* v. *McLeod,* 209 N. Y. 360, 364–365.) I find no reported case in this or any other State in this country in which it was determined whether or not a retaining lien survives the death of the attorney.

In Corpus Juris Secundum (Vol. 7, Attorney and Client, § 217, p. 1162) is found the following statement: "An attorney's lien, being a contractual right, ordinarily survives the death or disability of the client or of the attorney, provided it attached previous to such death or disability." The cases cited thereunder are not in point on the question of a retaining lien.

In Weeks on Attorneys at Law (2d ed., p. 761) we find the following statement of the law: "The court will not order the personal representative of a deceased solicitor to deliver the papers in a cause to another solicitor, without payment, or security for the payment of the bill." The author then cites the case of *Bolton* v. *Tate* (1 Swans. 84). That case was decided in England in 1818; the solicitor of the plaintiff had died, his widow and administratrix refused to deliver certain papers to the new solicitor unless security was given for payment of the services rendered by her deceased husband. A motion was made to compel the administratrix to deliver the papers to the new solicitor. The Lord Chancellor set forth his decision in the following language (pp. 84–85): "I recollect no instance of such a motion. If a party chuses that his solicitor shall not proceed, it would be vain for him to insist on taking the papers out of the solicitor's hands, till what is due to him has been paid. Here the disability arises by the act of God, and we are to consider the effect of that disability on the rights of the representative. You cannot take the papers from the administratrix without giving her security that her lien shall be discharged."

As I find no authority to the contrary I reach the conclusion that the retaining lien of an attorney survives his death and that his personal representative has the same right that he would have to retain the client's papers until the reasonable value of the legal services is paid or security given for payment.

The plaintiff contends that he must have his papers in order to proceed with this action. He says the amount of the legal services demanded by the executrix is excessive and that he is unable to pay those charges. It does not appear that he has made any offer to pay what he considers to be the fair or reasonable value of those services, or to attempt to have that amount determined. He has made some offer to pay for the services

rendered by the deceased in this particular action in an amount, which he says was agreed upon by Mr. Moore in his lifetime. The executrix has refused to accept the sum offered, and takes the position that she desires a settlement of the entire account.

The law gives the plaintiff a remedy. The court has power to order an attorney, or his personal representative, to turn over the papers to the client upon the giving of a bond or other security in a sufficient sum to pay the reasonable value of all the services rendered by the attorney. (*Matter of Makames,* 238 App. Div. 534, 537.) The difficulty that confronts the court is to determine the amount of the security to be given. In the affidavit of the deceased presented to me on the motion argued on February 15, 1947 (above referred to), Mr. Moore set forth the value of his services in connection with those two actions to be the sum of $3,290 and gave credit to his client of two payments aggregating $350, leaving a balance due of $2,940. In that proceeding there was also an affidavit of another attorney in which the value of the services was stated to be in excess of the amount charged by Mr. Moore. I was also furnished with a copy of a bill for services in those actions which the deceased had sent to his client. Plaintiff contends that the sum asked for by Mr. Moore was much more than the reasonable value of his services. He further says that Mr. Moore agreed to try the *Burke* case for $250. I am not advised as to other services the deceased rendered to this plaintiff, but the affidavit of counsel for the executrix sets forth that the total value of services was at least $5,000; that $500 has been paid on account, and there is a balance due of $4,500. On the record before me I cannot say whether or not the sum of $4,500 demanded is excessive. An orderly procedure would require the taking of proof as to the amount of security that should be required to be given to the executrix as a condition to be met by the plaintiff before she shall be required to surrender the papers upon which she asserts a retaining lien. Because of my court assignments outside of Erie County I cannot have that proof taken before me in time to grant reasonable relief to the defendant on his motion.

It is therefore, my decision, that if the parties agree, the amount of security to be given shall be in the sum of $3,500 and an order may be submitted accordingly. If either or both parties disagree with that amount, I will refer the matter to an official referee to determine the reasonable value of the services of the deceased attorney and to fix that figure as the amount for which the plaintiff must furnish security to the executrix.

The order to be entered herein may provide that on the report of the referee, the court at Special Term may make the appropriate order requiring the executrix to turn over the papers on the payment of the amount determined, or, in the alternative, the giving of security in that amount.

An order may be submitted by the defendant which shall provide that if the plaintiff does not serve his amended complaint on or before November 15, 1947, defendant may proceed, on proof by affidavit of such default, and without further notice to the plaintiff to present the proof on his counterclaim, and that plaintiff's cause of action be dismissed for failure to prosecute the action. The length of time given to the plaintiff is deemed by me to be adequate for him to take the necessary proceedings outlined in this decision in relation to obtaining the papers from the executrix.