Matthew M. Levy, J.
This is a consolidated stockholders’ derivative action. The subject corporation is Shahmoon Industries, Inc., formerly known as Warren Foundry & Pipe Corporation. Solomon E. Shahmoon is a director of the company, its principal (if not majority) stockholder and its president and chief executive officer. He and the other individual defendants, also officers or directors, are charged in the complaints with certain transactions alleged to have been in fraud of the corporation and its stockholders generally. These involve the sale by the corporation to Shahmoon personally of a substantial number of shares of the company’s treasury stock and the granting of an option by the corporation to Shahmoon to purchase an additional large block of stock (which transactions the plaintiffs seek to have set aside for the benefit of the corporation) and alleged waste and personal utilization of corporate assets in the sum of $10,000,000 (for which sum the plaintiffs demand judgment for the benefit of the corporation against Shahmoon and the other individual defendants). Shahmoon Industries, Inc., in whose behalf rescission and recovery are sought, is, of course, named as a defendant in the action (Carruthers v. Waite Min. Co., 306 N. Y. 136, 140).
Prior to commencement of these suits, the law firm of Shatzkin & Cooper were counsel to the corporation, with whom *151 they were under regular retainer and from whom they received substantial periodic compensation. When these actions were instituted, Shahmoon individually (as well as other defendants personally) were represented therein by that firm of attorneys, who also appeared for the corporate defendant. From the time of the inception of the litigations a number of years ago until some time in the year 1958, the attorneys rendered substantial services to the defendants therein. No bills for fees were presented to the individuals, and the attorneys were not paid by Shahmoon personally or by the other officers or directors, but the regular retainer fees were continued to be paid by the corporation. During the period of professional representation, the attorneys received — perhaps prior to the commencement of these suits and certainly subsequent thereto — a number of documents from Shahmoon, directly and indirectly.
In 1958 Shahmoon and Shatzkin & Cooper came to a parting of the ways. After some maneuvers between attorneys and clients by way of communication and litigation, a substitution of attorneys by consent was arranged for, covering both Shahmoon individually and the company, as well as the other persons who had been named as defendants and whom the attorneys represented. The stipulations of substitution were entered into without prejudice to any retaining lien to which the outgoing attorneys were entitled. Accordingly, the papers received from Shahmoon were and still are in the possession of the attorneys, who have instituted a plenary suit against Shahmoon personally, alleging that their services to him were of the reasonable value of $165,000, for which sum they demanded judgment against him. Shahmoon denied liability for the payment of fees in any amount. Summary judgment was sought by the attorneys in that action (Rules Civ. Prac., rule 113), but their application therefor was denied, and such determination was affirmed on appeal (8 A D 2d 621). The action is now pending undetermined in the Supreme Court, Kings County. There is no suggestion by the clients of unprofessional conduct on the attorneys’ part; nor is there any assertion by the attorneys that they were discharged in violation of agreement.
The present stockholders’ derivative suits resulted in a number of controversial motions and appeals therein, and bid fair to require a protracted trial. By special direction of the Presiding Justice of the Appellate Division, or of the calendar Judge presiding when the cause came on for trial, or both, the consolidated action was assigned for prompt trial. It is now being *152 tried before me. The issues are being vigorously contested on the trial, both by the several attorneys for the plaintiffs, on the one hand, and by the several attorneys now representing the defendants, on the other. As would be expected in a case of this kind, the trial involves the study, analysis and proffer of many documentary exhibits, including numerous corporate records. And the defendants assert that they are unprepared to proceed with the trial in proper protection of their interests, or to comply with the plaintiffs’ demands for the production of certain needed documents, because they, the defendants, are not in possession of such documents; nor are they, the documents, available to the defendants, as they are retained by Shatzkin & Cooper, who have refused to surrender possession or to permit inspection or copy of them.
During the course of the trial, the present attorney for the defendants Shahmoon individually and Shahmoon Industries, Inc., duly served a subpoena duces tecum upon Shatzkin & Cooper, requiring production at the trial of “ all your books, papers and records and files with respect to the ” stockholders’ derivative suits on trial, “ as well as the entire file ” in a related case. The former attorneys moved at Special Term for Motions to quash the subpoena. The defendants Shahmoon Industries, Inc., and Solomon E. Shahmoon thereupon countered with a cross motion for an order directing the attorneys ‘ ‘ to forthwith turn over to Shahmoon Industries, Inc., all its corporate books, papers and records now in their possession ”. The learned Justice presiding at Special Term for Motions referred these applications to me, as the Trial Judge, for disposition. Objection is interposed by Shatzkin & Cooper that I do not have jurisdiction in the premises, first, because the cross motion is not the special proceeding or plenary action contemplated by law to facilitate a client’s recovery of possession of papers retained by an attorney under a professional lien, and, second, because the defendants’ application under such cross motion had already been presented some months ago to another Justice at Special Term for Motions and such prayer had been disposed of by him adversely to the defendants, and, therefore, the present applications should be referred to and passed upon by him and not by me.
As to this alleged prior proceeding, suffice it to say that the record thereon shows that the attorneys are in error as to the basic facts. It may be that the attorneys’ other contention — that proper practice would entail a special proceeding, rather than a cross motion in this action — is a sound one. But the *153 attorneys did not rest on this objection; instead they proceeded to argue the merits. In view of such submission, and in the light of the calendar direction and of my desire for a prompt trial — the conclusion of which will avoid the continuance of the making of the many motions and the taking of the intermediate appeals that seem to have marked this litigation — I shall assume the responsibility of disposing of these motions without regard to the procedural objection.
On the merits, the basic question is that projected by the contention of the defendants that whatever lien the attorneys may have is inapplicable as against Shahmoon Industries, Inc., since the papers in their possession are corporate records and not the personal property of the defendant Solomon E. Shahmoon, against whom alone the retaining lien is being asserted.
It is not clear, on the present submission, whether all of the documents sought belong to the corporation or whether some of them are Shahmoon’s personal property. Since there is no suggestion by the former attorneys that they have any claim for fees against the company, it would ordinarily be helpful to separate the corporate papers from the individual client’s personal papers, direct the return of the former without further ado, and proceed further in respect of an appropriate disposition of the subpoena and of the application of Shahmoon personally. The individual and corporate defendants, who subpoenaed the papers and who seek to obtain possession of them, draw no such line of demarcation. And, in the view I take of the case, I have concluded that, in the circumstances here existing, I should not, on my own, make any such distinction.
There appears to be no issue raised as to whether it was Shahmoon who delivered the records to the attorneys, or in any event that they were delivered by others at his direction. Nor is there any contention that, when such delivery was so made, Shahmoon had transcended his powers as president and as chief executive officer of the company, of which he was also the controlling shareholder. There would, therefore, seem to be no doubt that if, while acting in a representative capacity, Shah-moon had delivered corporate papers to the corporation’s attorneys in aid of professional services to be rendered solely in the corporation’s behalf, the attorneys could retain such papers by way of lien for payment of any obligation of the corporation for fees due them (see 7 O. J. S., Attorney and Client, p. 1169, n. 89, for comparable cases where, for example, a guardian, trustee or executor acted in a Representative capacity, and the *154 estate is looked to for the payment of the charges for professional legal services rendered). But, in the case at bar, the former attorneys are, as I have said, suing Shahmoon personally and make no claim upon the corporation for unpaid fees. And, while it may be assumed that the records belong to the corporation and that they were delivered to the attorneys by Shahmoon, there is a dispute as to whether such delivery was in aid of any corporate purpose or in support of Shahmoon’s personal interests, since both were defendants in the same suits and both were represented by the same attorneys in such suits.
In Davis v. Davis (90 F. 791, 792) Judge Lowell said: “ That an attorney’s lien on his client’s papers should not be permitted to embarrass a third person in no way liable for the debt is reasonable, but, if an attorney’s lien upon his client’s papers amounts to anything, I think he may assert it as against the client, even when summoned by him to produce the papers by a subpoena duces tecum.” But, because of the interrelationship in the instant case between the individual and corporate defendants and because of their joint professional representation by the same attorneys, I do not find that the Davis case is adequate sustenance in the present context. No decisions in point are cited by either party to guide me as to what should be done in a situation such as this, and independent research has been equally unsuccessful in unearthing any helpful precedents. The matter must therefore be determined as an original question — and in doing so I must take into account the purpose of a retaining lien and the nature of a stockholders’ derivative action.
Viewing the issue in that light, it is plain to me that the attorneys ’ claim of lien in the case at bar should not be ignored. In a stockholders ’ suit, such as that now being tried before me, the corporation is but a nominal defendant (Monahan v. Kenny, 248 App. Div. 159, 160). The derivative action is, in substance, directed against the officer or director charged with wrongdoing, not against the corporation. Indeed, the company is, theoretically at least, the prospective beneficiary of the action, and it is the corporation that will be the gainer if the individuals who are the actual targets of the lawsuit fail in their defense (Holmes v. Camp, 180 App. Div. 409, 412). On the other hand, if the plaintiffs’ complaint in this stockholders’ derivative suit is dismissed, the corporation may — by virtue of appropriate statutory, charter or by-law provision — be called upon to reimburse Shahmoon for the reasonable expenses incurred by him in successfully defending this lawsuit (cf., as to a New York *155 corporation, General Corporation Law, art. 6-A). When, therefore, Shahmoon delivered the corporate records to the attorneys, he was seeking to aid them in the defense of the stockholders’ actions against him personally (and, perhaps, his individual codefendants) —not in support of any defense of the corporation itself, even though the corporation was (necessarily) named as a defendant in the actions and even though the attorneys who represented the individual defendants also appeared for the corporate defendant in the actions.
As has already been pointed out, Shahmoon is coneededly a principal stockholder, a director, the president and the chief executive officer of the corporation, and, in respect of the controversy as to the attorneys’ fees at least, appears to be the corporation’s controlling factor. In any event, there are very close ties, indeed, between this individual defendant and the defendant corporation. Whether the attorneys were to have been paid by Shahmoon or whether (by virtue of special agreement or the stipulated corporate retainer) they were to defend Shahmoon as well, will presumably be determined in the action instituted against him for fees. I need not here speak of “ piercing the corporate veil ”, although it does seem to me that, in the circumstances present, that veil is not to be donned and doffed at will by the corporation’s manager (cf. Sasmor v. Vivaudou, Inc., 200 Misc. 1020, 1030-1031). In this case, the corporation remains an entity, but, as I see the picture, the rights of the attorneys will be so impaired if their lien is not protected, that I hold that the corporate papers delivered to the attorneys by Shahmoon may be retained even as against a subpoena or an application by the corporation for their return. For present purposes, and for such purposes only, I hold simply that Shahmoon and Shahmoon Industries, Inc., are inseparable, and that Shatzkin & Cooper are entitled to retain the papers in their possession pending a disposition of their claim for fees against Shahmoon.
That, of course, does not — in the present posture of the trial now in progress before me in respect of the controversies between the minority stockholders and Shahmoon and his associates— definitively dispose of the pending applications involving the claim of lien asserted by Shahmoon’s former attorneys. In opposition thereto, the defendants Shahmoon rely most heavily upon Matter of Makames (238 App. Div. 534) where the court said (pp. 535-536): “ If the only purpose of the petitioner [the client] was to compel the production of these [insurance] policies upon the trial of the actions which he had *156 commenced against the various insurance companies, so that the policies might be offered in evidence, we see no reason why respondent’s [the client’s] purpose would not be amply served by the issuance of a subpoena duces tecum * * * Undoubtedly, the court, upon the trial of these actions, would protect, so far as possible, appellants’ lien, and would not compel appellants to surrender possession of the papers in their possession. They could be marked in evidence, and, if necessary, read into the record, and returned to appellants. If this was done, no claim could be made that appellants had lost their lien by a surrender of the papers in their possession.”
I do not go along with the contention of the defendants that this language in the Mahames opinion charts my course in the case at bar. (Cf. Kemp v. King, 2 Moody & R. 437; 174 Eng. Rep. 342.) It may be that, in certain circumstances, the court might direct the production of documents by counsel, and not their turnover to the former client (see note, 3 A. L. R. 2d 152-153). But, in such instances, this procedure would preserve the lien only if the papers had intrinsic value (e.g., bearer bonds). Where, as here, the value of the documents lies in the information they contain, such production (with the consequent opportunity for examination and copy) would, in effect, vitiate the lien.
It should also be noted at this point that the documents subpoenaed, and possession of which is sought, by the defendants Shahmoon, not only have no inherent worth as such, but are not by law required to be filed in court and there are no special circumstances justifying, as a matter of public policy, judicial frustration of the attorneys ’ lien. Accordingly, the cases cited by the defendants Shahmoon are not in point. These are, in addition to Matter of Makames (238 App. Div. 534, supra), Matter of Reiss (200 Misc. 697, where the attorney sought to withhold a testamentary document, which, under the law, must be produced for probate upon the client’s demise), and Matter of Hauptmann (243 App. Div. 613, 616, where the former client was on trial for his life as an accused murderer, and the papers withheld by the attorneys were deemed relevant to his defense).
In The Flush (277 F. 25, cert, denied 257 U. S. 657) the opinion deals at length with the question of whether the client has a right to inspection of the papers upon which his attorney claims a lien (pp. 29-30). The court discusses the English cases on the point, which are in disagreement, and says (p. 30): “In this country there seems to be very little authority upon the question * * *. As a matter of principle, and without regard *157 to authorities, it seems to us that a client’s right to inspect the papers upon which the attorney’s lien exists should be denied.” The court reasoned as follows . (p. 31): “ If the client is given the right to inspect the papers or to compel their production while the lien continues, it certainly impairs the value of the lien, as it diminishes the embarrassment caused by the attorney’s retention of them, and might make them valueless to the attorney, and the lien nugatory. At the argument counsel gave a homely, but effective, illustration of this. He said that a blacksmith has a lien on a horse for its shoeing, and can retain possession of the horse. If he were compelled to let the owner have the use of the horse whenever he so desired, the blacksmith would simply be left with the privileges of feeding and caring for the horse.”
The argument that the value of a lien is necessarily affected by the measure of the client’s need for the documents retained is a most cogent one. A lien on useless papers is itself useless. The very nature and purpose of an attorney’s retaining lien involve inconvenience to the client. The function of the lien is essentially one of compulsion — its aim being to assure payment of the fee due the attorney for services rendered. The lien, therefore, is not to be disregarded merely because its enforcement renders it effective (Matter of San Juan Gold, Inc., 96 F. 2d 60). A reading of the cases readily discloses that, throughout the years, there is a consistently strong pattern of legislative and judicial protection of an attorney’s lien — whether retaining or charging (Fischer-Hansen v. Brooklyn Heights R. R. Co., 173 N. Y. 492, 496-498; Robinson v. Rogers, 237 N. Y. 467, 471-473; Judiciary Law, § 475).
At the same time, I am of the view that the plea by Shahmoon — that he needs the documents withheld from him by his former attorneys in order adequately to defend the action now being prosecuted against him — should not fall on deaf ears. When an attorney’s valid retaining lien comes into conflict with a bona fide subpoena duces tecum, the court must reconcile the laywer’s interest in the collection of his fee with the client’s interest in being able to submit at the collateral trial all available relevant evidence in his behalf. And, not alone should there be a weighing of these conflicting interests, but there should, I think, be placed on the scales two more ingredients — the economic interest of the community in having all just debts paid and the social interest of the community in having all relevant material presented to a court engaged in the resolution of a justiciable controversy.
*158 I have come to the considered conclusion that, on balance, the most equitable result to be reached in this case would be to require the attorneys to produce and deliver the documents, but upon the condition that the defendant, Solomon E. Shahmoon, post security in protection of their claim of lien (cf. Robinson v. Rogers, 237 N. Y. 467, 473, supra; Leviten v. Sandbank, 291 N. Y. 352, 358; Goldman v. Rafel Estates, 269 App. Div. 647, 650; Matter of Makames, 238 App. Div. 534, supra). I recognize that by thus disposing of these applications, I seem to be protecting an attorney’s lien which, it is claimed, does not exist either in respect of documents retained or liability for fees. But the procedure I have adopted is necessary unless I halt or delay the trial of the stockholders’ derivative action pending the ultimate determination of the attorneys’ suit for fees or of the issues as to whether they do or do not have a lien against the papers in their possession, or whether they do or do not have a claim for fees against Shahmoon personally, protected by that lien, and, if so, in what amount. In arriving at the determination I have made, my purpose is adequately to preserve the attorneys ’ claim of lien and yet not permit their enforcement of the lien as such to deprive the client of the opportunity of gathering all available material in support of his defense to the actions against him or to interfere with the judicial endeavor to ascertain the facts deemed necessary for the true administration of justice- — if that deprivation and interference may fairly be avoided. In that respect, I agree with the defendants Shahmoon that when the court said in Matter of Makames (238 App. Div. 534, 536, supra) that .“ [cjompulsory measures for the production of evidence are essential to the very existence of a court of justice in any civilized community”, the language of the court is apposite here (cf., on another plane, Ticon Corp. v. Emerson Radio & Phonograph Corp., 206 Misc. 727). But, by the same token, the attorneys should n.ot at this juncture lose the protection afforded them by possession when substantial issues have been raised by them in support of the claim to possession.
There is no plea of poverty on the part of Shahmoon, and no claim that he is financially unable to furnish adequate security. In the circumstances, if he desired or felt impelled to engage in litigation — although defensive — he must give assurance that his attorneys will be paid for the professional services rendered by them. For it has long ago been recognized, generally, that “ [t]here can be no litigation without lawyers; no lawyers without fees; no fees from [a non-paying client] without a lien ” (Fry v. Calder, 74 Ga. 7, 9).
*159 How much the security should he remains a problem. It should, of course, be “ ample to protect the [attorneys], and to assure payment to them of their fees ” (Matter of Makames, 238 App. Div. 534, 537, supra). But, the mere fact that the attorneys claim to be entitled to the sum of $165,000, and that they have instituted suit for that amount against Shahmoon, does not, without more, require or warrant security in that amount. The attorneys have not submitted to me a copy of their complaint in the action for fees, a copy of their bill of particulars, or even an itemized statement of services rendered or of time spent. On the other hand, the client’s denial of personal indebtedness does not, in the circumstances presented in the ease at bar, preclude a requirement that he give security. And on the papers before me, I cannot come to a satisfactory conclusion — even for an intermediate purpose — whether the attorneys were or were not to be paid by Shahmoon in addition to the stipend they periodically received from the corporation (see Shatskin v. Shahmoon, 8 A D 2d 621, supra). All of these factors and perhaps others are relevant to a proper determination of this issue. A reference will therefore be directed to ascertain the amount of the security (cf. Simon v. Burke, 190 Misc. 618, 623). Of course, in lieu thereof, the contending parties may agree as to the amount of the security to be posted, and file a stipulation accordingly.
This determination as well as that of the Referee is without prejudice as to whether Shahmoon is in fact personally liable to Shatztin & Cooper for fees and without prejudice to the amount of the fees, if any, that he should in fact be required to pay. These are matters for definitive resolution in the plenary action now pending or in any special proceeding the respective parties may appropriately institute.
Settle order.