BERNARD N. YANOW *v.* TEAL INDUSTRIES, INC., ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, JS.

Argued February 13—decision released July 10, 1979

*Daniel Shepro,* for the appellant (plaintiff).

*Gordon A. Evans,* for the appellees (defendants).

Longo, J. This action in the nature of both a shareholder's derivative suit and an individual action was brought by the plaintiff, Bernard N. Yanow, against Teal Industries, Inc. (Teal), a Connecticut corporation, and Martin B. Gentry, Jr., who, at relevant times, was an officer and director of Teal, seeking an accounting, damages and nullification of a merger between Teal and Mallard

Manufacturing Company (Mallard), of which Yanow was a 10 percent shareholder. The complaint, discussed more fully infra, alleged in four counts that Teal and Gentry had committed a series of corporate wrongs resulting in damage to Yanow individually and to Mallard.

The defendants, in addition to denying the substantive allegations of the complaint, pleaded nine special defenses directed to the capacity and standing of the plaintiff to initiate and maintain the action. Insofar as they are pertinent to this appeal, those defenses alleged that (1) Yanow's exclusive remedy upon the merger of Teal and Mallard as a dissatisfied former stockholder of Mallard was to be paid the value of his shares, following an appraisal of their value as provided in General Statutes §§ 33-373 and 33-374, which exclusive remedy Yanow was alleged to have waived; (2) Yanow's complaint failed to state any nonderivative causes of action on which relief could be granted and the wrongs he alleged the defendants had committed could properly be remedied only in a derivative suit; and (3) Yanow had no standing to bring suit on the derivative causes of action alleged because derivative actions may be brought only by shareholders of the corporation that is injured, and Yanow was not, at the time the action was brought, a shareholder of Mallard, as Mallard no longer existed. These three special defenses were denied by Yanow, and the defendants then moved for summary judgment on each of the special defenses, addressed to the four counts of the complaint, on the grounds that the affidavits and other documentary proof submitted by them demonstrated that no genuine issue of material fact existed as to the plaintiff's lack of standing and capacity to bring the action and as to

the exclusivity of the plaintiff's appraisal remedy, and that the defendants were, therefore, entitled to judgment as a matter of law.

The court granted the defendants' motions for summary judgment based on the special defenses, and the plaintiff has appealed to this court from the judgment rendered.

The allegations of the complaint, as made more specific, which are, for the purposes of a summary judgment, assumed to be true; *Barrett* v. *Southern Connecticut Gas Co.,* 172 Conn. 362, 379, 374 A.2d 1051 (1977); together with the affidavits and exhibits filed in connection with the summary judgment motions, and the defendants' answer, reveal the following: For some time prior to October 31, 1971, the effective date of the Teal-Mallard merger, the plaintiff was the owner of 350 shares of stock of Mallard, representing almost 10 percent ownership of Mallard. During this period, Gentry was an officer of Teal and Mallard, and Teal owned and controlled the operations and activities of Mallard. Through Teal, Gentry dominated and controlled the business operations of Mallard. Gentry and Teal caused unfair transactions among Mallard, Teal, Gentry and others controlled by Gentry, depressing the value of the plaintiff's shares of Mallard so that the defendants could purchase the stock for less than its fair market value, depriving the plaintiff of the value of his Mallard stock, and depriving Mallard of valuable assets, income and corporate opportunities. More specifically, in count one of the complaint, it was alleged that, through their control and domination of Mallard, the defendants had breached their fiduciary duties and obligations to the plaintiff, individually, by causing nineteen unfair trans-

actions[1] between themselves and others controlled by Gentry to their benefit only and without disclosure to the plaintiff of the details of the transactions. It was further alleged that Teal benefited by paying little or no salary to its officers and employees which were, in effect, Mallard's and that its profits were made essentially on goods manufactured by Mallard which could have been sold by Mallard. In count two, a breach of duty to Mallard arising out of most of the above transactions was alleged. The plaintiff again claimed that the merger was effectuated without corporate purpose and with the sole intention of freezing him out. Count three alleged that the defendants caused the merger without a business purpose, without full disclosure to the plaintiff, and with the intent to deprive the plaintiff of his shareholding in Mallard in order to benefit the defendants. In count four, the plaintiff alleged that Gentry, in his capacity as director and officer of Mallard, knew of special facts concerning Mallard's financial condition and affecting the value of the plaintiff's stock, which were not disclosed to

---

[1] The nineteen transactions referred to involve, inter alia, corporate opportunity usurped by both defendants, intercorporate transactions by both defendants, including, but not limited to, loans, rentals, pledges of assets between corporations owned or controlled by Gentry, using Teal as a shell, undisclosed depression of earnings, acquiring Mallard's stock without offering it to the plaintiff, offering to buy the plaintiff's stock at various times at increasing prices without disclosing to the plaintiff special facts affecting the share's value on account of merger discussions, in that the assets of Mallard and Teal were alleged to have been sold approximately one year after the merger to the Alkaline Battery Corporation; causing Mallard to be merged into Teal without corporate purpose and for the purpose of excluding Yanow as a shareholder of Mallard and for the purpose of depriving Mallard of an opportunity to profit by the sale of its assets to a third party; Gentry's causing Mallard to become a Teal sales agent, and Teal's purchasing and selling products of other companies, which deprived Mallard of the opportunity to manufacture and sell those products itself.

the plaintiff, and that Gentry caused the merger to deprive the plaintiff of his shares and to avoid paying the plaintiff the fair market value of his shares.

During the period from 1966 to 1971, Gentry offered to the plaintiff increasing amounts for the purchase of his shares, which offers were not accepted by the plaintiff. The shares were valued, for the fiscal year ending October 31, 1971, at $9221.

On October 31, 1971, Mallard completed a "short form" merger into Teal under the provisions of §§ 33-364 et seq. of the General Statutes. In accordance with §§ 33-370, 33-373 and 33-374, Gentry timely notified the plaintiff of the merger, sent him a copy of the merger agreement, notified him of the statutory procedures for dissenting shareholders, and informed him that the fair market value of his stock would be determined within sixty days of the effective date of the merger. The plaintiff dissented from the merger, demanding an appraisal of the fair market value of his shares, but did not complete the appraisal remedy prescribed by statute, and never retired and exchanged his Mallard shares for cash. General Statutes §§ 33-373, 33-374.

In sustaining the defendants' motions for summary judgment, the court found that (1) as to the merger, the remedy of the plaintiff was terminated by his failure to follow the exclusive share appraisal remedy set forth in General Statutes § 33-373 (c); (2) as to counts one, three and four, the complaint stated only derivative causes of action that could be pursued only by a nominal plaintiff who was a shareholder of Mallard, and, as the plaintiff was not a shareholder of Mallard at the time the action was

commenced, he lacked standing and capacity to sue; and (3) as to count two, the claim was only derivative, and could not be sued upon by one not a shareholder at the time of the institution of the action, invoking the same "continuous ownership" requirement relied upon to sustain the summary judgment as to the other counts of the complaint. The plaintiff has assigned error in the trial court's granting of the defendants' three motions for summary judgment.

I

A

"The party moving for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which under applicable principles of substantive law, entitle him to judgment as a matter of law. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." *Dougherty* v. *Graham,* 161 Conn. 248, 250, 287 A.2d 382 (1971); see *Town Bank & Trust Co.* v. *Benson,* 176 Conn. 304, 306, 407 A.2d 971 (1978). If appropriate, a judgment shall be rendered if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is thus entitled to judgment as a matter of law. Practice Book, 1978, § 384; see *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 260 A.2d 596 (1969). A "material fact" is simply a fact which will make a difference in the result of the case; id., 379; and a summary disposition should be rendered in the limited instances where the evidence is such that no room for disbelief could

exist in the minds of the jury and in circumstances which would require a directed verdict for the moving party. *Spencer* v. *Good Earth Restaurant Corporation,* 164 Conn. 194, 198, 319 A.2d 403 (1972). As, generally speaking, summary judgment is an attempt to dispose of cases in a manner which is speedier and less expensive for all concerned than a full-dress trial; *Town Bank & Trust Co.* v. *Benson,* supra; the function of the trial court is only to determine whether there is a genuine issue as to any material fact, but not to decide that issue if it does exist until the parties are afforded a full hearing. Practice Book, 1978, § 384; *Michaud* v. *Gurney,* 168 Conn. 431, 433, 362 A.2d 857 (1975). Issue finding, rather than issue determination, is the key to the procedure.

## B

With these considerations in mind, we turn to the present controversy. The court rendered no finding and, although we may consult its memorandum of decision to ascertain the legal conclusions upon which the court based its judgment; *Treat* v. *Town Plan & Zoning Commission,* 145 Conn. 136, 140, 139 A.2d 601 (1958); we are confined to an examination of the pleadings and affidavits to determine whether they show that there is no genuine issue as to any material fact and that the defendants were entitled to judgment as a matter of law. Practice Book, 1978, § 384; *Pine Point Corporation* v. *Westport Bank & Trust Co.,* 164 Conn. 54, 55, 316 A.2d 765 (1972); *Dougherty* v. *Graham,* 161 Conn. 248, 250, 287 A.2d 382 (1971).

We first address the issue whether the court was correct in holding that the appraisal right given the

plaintiff by §§ 33-373[2] and 33-374[3] of the General Statutes, of which the plaintiff concededly did not avail himself, was his exclusive remedy to attack

[2] General Statutes § 33-373 provides in relevant part: "Rights of objecting shareholders. . . . (c) Any shareholder of a merging or consolidating domestic corporation who objects to the merger or consolidation shall have the right to be paid the value of all shares of such corporation owned by him in accordance with the provisions of section 33-374, except that a shareholder of a merging domestic corporation which is to be the surviving corporation shall have such right only: (1) If and to the extent that the plan of merger will effect an amendment to the certificate of incorporation of the surviving corporation which would entitle the shareholder to such right pursuant to the provisions of subsection (a) of this section, or (2) if the plan of merger provides for the distribution to shareholders of the surviving corporation of cash, securities or other property in lieu of or in exchange for or upon conversion of outstanding shares of the surviving corporation. . . . (f) *Where the right to be paid the value of shares is made available to a shareholder by this section, such remedy shall be his exclusive remedy as holder of such shares against the corporate transactions described in this section, whether or not he proceeds as provided in section 33-374.*" (Emphasis added.)

[3] General Statutes § 33-374 describes the procedure which a shareholder objecting to a merger must follow. After providing for notice to the corporation and demand by the shareholder, the statute, in relevant part, states further: "(c) Any demand to purchase shares under subsection (b) of this section shall state the number and classes of shares of the shareholder making the demand. Except as provided in subsection (i) of this section, *any shareholder making such demand shall thereafter be entitled only to payment as in this section provided and shall not be entitled to vote, to receive dividends or to exercise any other rights of a shareholder in respect of such shares. No such demand may be withdrawn unless the corporation consents thereto. Any shareholder failing to make demand as provided in subsection (b) of this section shall be bound by the corporate transaction involved in accordance with its terms. . . . (d) . . . the corporation shall make a written offer, to each shareholder who makes demand as provided in this section, to pay for his shares at a specified price deemed by such corporation to be the fair value thereof as of the day prior to the date on which notice of the proposed corporate transaction was mailed, exclusive of any element of value arising from the expectation or accomplishment of such corporate transaction. . . .* (e) Within twenty days after demanding the purchase of his shares, each shareholder so demanding shall submit the certificate or certificates representing his shares to the corporation for notation thereon that such demand has been made. *His failure to do so shall, at the*

the Teal-Mallard merger. Under § 33-370[4] of the General Statutes, a domestic corporation which, like Teal, owns 90 percent of the outstanding shares of a subsidiary domestic corporation may, unless its certificate of incorporation provides otherwise, merge with its subsidiary, without a vote of approval, and indeed over the disapproval, of the shareholders of the subsidiary corporation.[5] This

---

*option of the corporation, terminate his rights under this section unless a court of competent jurisdiction, for good and sufficient cause shown, otherwise directs."* Subsection (g) of the statute provides for a shareholder's suit in the Superior Court to determine the value of his shares, and states: *"(g) . . . All shareholders who are parties to the proceeding shall be entitled to judgment against the corporation for the amount of fair value of their shares as of the day prior to the date on which notice of the proposed corporate transaction was mailed, exclusive of any element of value arising from the expectation or accomplishment of such corporate transaction."* (Emphasis added.)

[4] "[General Statutes] Sec. 33-370. MERGER WITH SUBSIDIARY CORPORATION. Unless its certificate of incorporation otherwise provides, any domestic or foreign corporation which owns at least ninety per cent of the outstanding shares of each class of any other domestic or foreign corporation may merge with such subsidiary corporation as provided in this section. At least one of such corporations shall be a domestic corporation, and should one of such corporations be a foreign corporation, such merger shall not be permitted in this state unless it is permitted by the laws of the state under which such foreign corporation is incorporated. *Such merger may be effected without approval by a vote of the shareholders of the subsidiary corporation. . . ."* (Emphasis added.)

[5] At common law, a stockholder in a corporation could veto a proposed merger or consolidation on the premise that shareholders should not be forced to continue in a new or changed enterprise against their will. See Folk, The Delaware General Corporation Law 331 (1972). Modern merger statutes generally eliminate the power of absolute veto; today a merger may be accomplished upon the affirmative vote of a majority; see, e.g., Del. Code annot. tit. 8, § 251 (c); ABA-ALI Model Bus. Corp. Act § 73 (1974); or two-thirds; see, e.g., N.Y. Bus. Corp. Law § 903 (a) (2) (McKinney); of the shareholders of the acquiring and acquired corporation.

The common-law concept that a shareholder's interest could not be altered by a structural change without unanimous consent, eroded in part by modern statutes, is completely eviscerated by statutes, com-

form of merger is a statutory "short-form" merger; cf. General Statutes §§ 33-364–33-367; and, if effectuated in adherence to statutory procedure, considerations of whether such a transaction is good or bad, enlightened or ill-advised, selfish or generous, are beside the point.[6] Section 33-370 authorizes a parent-subsidiary merger and any kind of judicial consideration of this variety of fundamental change in the corporate entity must proceed from that premise. "This side of state policy is based upon a

mon to almost all states; see Model Bus. Corp. Act annot. 2d § 75 ¶ 6; such as the short-form merger statute. General Statutes § 33-370. Legislatures, courts and commentators alike have taken the view that majoritarian decision-making must take precedence over the dissent of a minority shareholder, thus reflecting a social policy of preferring corporate democracy and flexibility over the common-law notion of vested shareholder rights. See Brudney, "A Note on Going Private," 61 Va. L. Rev. 1019 (1975); Borden, "Going Private — Old Tort, New Tort or No Tort," 49 N.Y.U. L. Rev. 987 (1974); Greene, "Corporate Freeze-out Mergers: A Proposed Analysis," 28 Stan. L. Rev. 487 (1976); comment, "The Short Merger Statute," 32 U. Chi. L. Rev. 596 (1965); note, "Freezing out Minority Shareholders," 74 Harv. L. Rev. 1630 (1961).

[6] It should further be noted, in this regard, that a "freeze-out," defined broadly as any action by those in control of the corporation which results in the termination of a stockholder's interest in the enterprise, with the *purpose* of forcing a liquidation or sale of the shareholder's share, not incident to some other wholesome business goal; see O'Neal & Derwin, Expulsion or Oppression of Business Associates 3 (1961); Vorenberg, "Exclusiveness of the Dissenting Stockholder's Appraisal Right," 77 Harv. L. Rev. 1189, 1192–93 (1964); is, in the context of a short-form merger, neither unusual nor per se illegal. The very purpose of the short-form merger is to provide the parent corporation with a means of eliminating the minority shareholder's interest in the corporation; *Stauffer* v. *Standard Brands, Inc.*, 41 Del. Ch. 7, 10–11, 187 A.2d 78 (1962); see note, "Going Private, etc.," 10 Conn. L. Rev. 511, 516 (1978); and the appraisal remedy has been described as an adequate quid pro quo for statutes giving the majority the right to override the veto of a dissenting shareholder. Vorenberg, op. cit. 1194; O'Neal & Derwin, op. cit. 69; see *Blumenthal* v. *Roosevelt Hotel, Inc.*, 202 Misc. 988, 115 N.Y.S.2d 52 (1952); note, "Freezing out Minority Shareholders," 74 Harv. L. Rev. 1630, 1631 (1961).

recognition that a substantial majority of the corporation's share voting power has endorsed the transaction. In fairness to the majority, and to the business itself, the transaction should be allowed to proceed, unimpeded by the collateral condemnation of the interests of a minority of dissenting shareholders." Cross, Corporation Law in Connecticut § 8.6, p. 436 (1972).

In the present case, the plaintiff presses no procedural claim that the defendants did not correctly adhere to all of the requirements imposed by the merger and related statutes. General Statutes §§ 33-370–33-374. The plaintiff does argue, however, that the court erred in sustaining the first of the defendants' summary judgment motions, asserting that his remedy for a claimed breach of fiduciary duty is not barred by the provisions of §§ 33-373 and 33-374. The plaintiff's view is that the statutory provision allowing a dissenting shareholder to compel an appraisal of the value of his minority stock interest is not an exclusive remedy as to the merger itself. Although the plaintiff is supported in this view by some authority of consequence, we do not share it.

This state's policy with respect to fundamental changes in a stock corporation is reflected in the extent to which shareholders may inject their views into such transactions. Our corporation legislation allows the interested parties considerable freedom to operate in the corporate form without statutory restraint. As we have initially indicated; see footnote 5, supra; the nineteenth-century view that "the corporation" meant "the shareholders" led to the unworkable result that changes of a fundamental nature could not be brought about unless *all* the

shareholders agreed. Twentieth-century statutes have given relief from this state of affairs by allowing a substantial majority of the corporation to direct and control the operations and activities of the business. This "implied contract" idea of corporate management; see *Klopot* v. *Northrup*, 131 Conn. 14, 24, 37 A.2d 700 (1944); has led to a recognition that there is a point of organic change at which a minority shareholder should be able to say: "I want out." The dissenter's rights provisions of §§ 33-373 and 33-374 serve this purpose by giving an objecting shareholder the statutory right to have his share appraised and to be paid for the shares in cash.

Our statutes have long provided an appraisal remedy for dissenting shareholders of a corporation that has gone through a merger, consolidation, or the sale of all of its assets.[7] Although we have decided no interpretative or explanatory case on the precise subject, and the matter thus arises as one of first impression, we by no means write on a blank slate concerning the issue of the exclusiveness of the appraisal rights remedy. Section 33-374 (f) explicitly makes appraisal the exclusive remedy of the objecting shareholder. See Cross, Corporation Law in Connecticut § 8.6 (1972). Professor Bayless

---

[7] Appraisal rights on a merger or consolidation were extended by the Corporation Act of 1901; 1901 Public Acts, c. 157, § 41; and amended by 1937 Public Acts, c. 21, § 5. The statute was compiled, with revision, as § 33-114 (Rev. 1958), repealed by 1959 Public Acts, No. 618, § 137, and revised in 1969, 1969 Public Acts, No. 729, § 21, and in 1971, 1971 Public Acts, No. 360, § 19, with amendment, 1978 Public Acts, No. 78-280, §§ 2, 127, into its present form, General Statutes § 33-374. The sale-of-all-assets statute, adopted in 1923, included a similar appraisal rights provision. 1923 Public Acts, c. 242, § 2, compiled as General Statutes § 33-19 (1958 Rev.), repealed by 1959 Public Acts, No. 618, § 137 and replaced by General Statutes § 33-374.

Manning, the principal author of Connecticut's current statute, describes the statutory appraisal as "unusually explicit in making the remedy exclusive"; Manning, "The Shareholder's Appraisal Remedy," 72 Yale L.J. 223, 246n (1962); and other commentators have concurred in Manning's view. See Model Bus. Corp. Act annot. 2d § 81 ¶ 3 (stating that Connecticut's appraisal remedy is almost identical to the exclusive appraisal remedy in the model act); Gordon, "The Connecticut Stock Corporation Law," 16 Conn. Gen. Stat. annot. 29, 82.

Despite this background, the plaintiff mounts a two-pronged argument in support of his claim that the right of share appraisal is not his exclusive remedy as to the merger, relying on a purported "savings clause" in the statute; General Statutes § 33-369 (e); and upon cases from other jurisdictions holding that a particular appraisal statute is not a dissenting shareholder's exclusive remedy upon a parent-subsidiary merger. The short answer to this claim is that neither the statutory savings provision, nor cases from other jurisdictions speak to or alter the specific exclusivity of the appraisal remedy envisioned by the Connecticut statute.

General Statutes § 33-369 (e) provides for the transfer liability of the merged corporation in a merger, making the surviving corporation responsible for "all the liabilities . . . including liabilit[ies] to dissenting shareholders, of each of the merging . . . corporations; and any claim existing or action or proceeding, civil or criminal, pending by or against such corporation." Although this statute is relevant to the validity of the plaintiff's claims of breach of fiduciary duty antecedent to the merger; see discussion part II; it is not the case, as the plaintiff argues, that the merger itself, and claims relat-

ing thereto, should be regarded as an "existing claim" permitted to survive the merger under the savings provision of § 33-369 (e). Claims with respect to the merger itself are preempted by the specific, exclusive right of share appraisal extended to a dissenting shareholder in §§ 33-373 and 33-374. Our statute, in unequivocal terms, contemplates a "cash payout" by which the interests of minority stockholders may be extinguished and their continued participation in the corporate entity terminated. *Beloff* v. *Consolidated Edison Co.,* 300 N.Y. 11, 19, 87 N.E.2d 561 (1949); *Willcox* v. *Stern,* 18 N.Y.2d 195, 201, 219 N.E.2d 401 (1966) (under comparable New York statute which, prior to amendment, made appraisal exclusive dissenting shareholder's remedy, held: the merged corporation's shareholder has only one right—to have the value of his holding protected, and that protection is given him by his right of appraisal); cf. N.Y. Bus. Corp. Law § 623 (McKinney) (specifically amending statute to include shareholder rights in addition to appraisal); *Stauffer* v. *Standard Brands, Inc.,* 41 Del. Ch. 7, 187 A.2d 78 (1962) (Delaware short-form merger statute allows majority stockholder to eliminate the minority interest without any corporate purpose and subject only to an appraisal remedy); see *Voeller* v. *Neilston Warehouse Co.,* 311 U.S. 531, 535, 61 S. Ct. 376, 85 L. Ed. 322 (1941); *Lessler* v. *Dominion Textile Ltd.,* 411 F. Sup. 40 (S.D. N.Y. 1975) (existence of appraisal remedy eliminates risk of injury to shareholders and mitigates any hardship to them); annot., 79 A.L.R. 624, 645–50 (collecting cases holding appraisal remedy to be exclusive). Thus, the flat restriction to appraisal rights for a dissenting shareholder in relation to a short-form merger; General Statutes § 33-373; dictates that the

savings provision of § 33-369 (e) does not include claims as to the merger itself. We cannot search out some intent in a statute which is clear and unambiguous, which we may believe the legislature actually had, and give effect to it; we are confined to effectuating the intention which is expressed in the words used by the legislature. *Madison Education Assn.* v. *Madison,* 174 Conn. 189, 192, 384 A.2d 361 (1978); *Kulis* v. *Moll,* 172 Conn. 104, 110, 374 A.2d 133 (1976); *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 410–11, 311 A.2d 65 (1972).

Reference to the statutes and interpretative cases of other jurisdictions, moreover, must proceed, if at all, with caution, circumspection and restraint. Appraisal remedy statutes differ greatly among jurisdictions, and the extent to which the availability of a right of appraisal precludes a dissenting shareholder from pursuing, as to the merger, other relief, depends upon the precise wording of the appraisal remedy statute. For example, California provides that, other than appraisal rights, a dissenting shareholder has no statutory vehicle for assailing a short-form merger. See Cal. Corp. Code annot. §§ 4300–4312 (Deering). In Georgia and Kentucky, a shareholder must elect between claiming payment and bringing suit for fraud or illegality in the corporate action; see Ga. Code annot. § 22-1202; Ky. Rev. Stat. annot. §§ 271.415 (4), 271.490; see *E.I.F.C., Inc.* v. *Atnip,* 454 S.W.2d 351 (Ky. 1970); while Massachusetts, Texas and Wisconsin make appraisal the exclusive remedy unless there are charges of fraud or illegality. See Mass. Gen. Laws annot. c. 156B, §§ 76, 86–98 (West); 3A Tex. Civ. Stat. art. 5.12 (Vernon); Wis. Stat. annot. § 180.69 (West); see *Hochberg* v. *Schick Investment Co.,* 469 S.W.2d 474 (Tex. Civ. App. 1971). New

York's statute, after stating that the remedy of appraisal is exclusive, tempers that language by providing for a shareholder action if the corporate action taken is "illegal or fraudulent as to him." N.Y. Bus. Corp. Law § 623 (k) (McKinney). Indiana provides that its statutory appraisal remedy is not intended to cut off any rights that a shareholder might otherwise have to attack an illegal merger. Ind. Code annot. §§ 23-1-5-7, 23-1-6-5 (Burns). In North Carolina, the appraisal right is given, with the addition of "any other right, in the law or equity." N.C. Gen. Stat. § 55-113 (b). See, generally, Model Bus. Corp. Act annot. 2d § 81; 19 Am. Jur. 2d, Corporations, §§ 1541–45; Lattin, "Minority and Dissenting Shareholders' Rights in Fundamental Changes," 23 Law and Contemp. Prob. 307 (1958). Our legislature, in passing the current short-form merger statute; 1969 Public Acts, No. 729, § 19; and in modifying the appraisal right statute; 1969 Public Acts, No. 729, § 20; obviously had the benefit of the statutes previously enacted by other jurisdictions, yet chose to make appraisal rights upon the elimination of the minority shareholder interest the shareholder's exclusive remedy.

The court decisions of other jurisdictions have reached differing results. Some have interpreted the exclusivity of the appraisal remedy narrowly; see *Lessler* v. *Dominion Textile Ltd.,* 411 F. Sup. 40 (S.D. N.Y. 1975); and others have held that appraisal was the exclusive remedy, even though the statutes did not so provide. *Geiger* v. *American Seeding Machine Co.,* 124 Ohio St. 222, 177 N.E. 594 (1931); *Adams* v. *United States Distributing Corporation,* 184 Va. 134, 34 S.E.2d 244 (1945). Delaware has held that, in a long-form merger pursuant to its statute; Del. Code. annot. tit. 8, § 251 (1974); if the

sole purpose is to freeze out a minority shareholder, the merger is improper. *Singer* v. *Magnavox Co.,* 380 A.2d 969 (Del. 1977).[8]

Although these cases are relevant, they cannot, in view of the language of §§ 33-373 and 33-374 of the General Statutes, be regarded as dispositive. The other cases relied upon by the plaintiff; *Tanzer* v. *International General Industries, Inc.,* 379 A.2d 1121 (Del. 1977); *Young* v. *Valhi, Inc.,* 382 A.2d 1372 (Del. Ch. 1978); *Gabhart* v. *Gabhart,* 370 N.E.2d 345 (Ind. 1977); and *Berkowitz* v. *Power Mate Corporation,* 135 N.J. Super. 36, 342 A.2d 566 (1975); are not persuasive. *Tanzer* involved the Delaware statute, which provides for shareholder remedies in addition to stock appraisal rights; *Young* involved a long-form Delaware corporate merger, enjoined on the basis that the method used had improperly circumvented a charter provision of the corporation; *Gabhart* was an action attacking a merger brought under the Indiana statute which provides

[8] The plaintiff relies heavily upon this case as providing a basis for an interpretation of Connecticut's appraisal rights statute as nonexclusive. We cannot agree. *Singer* dealt with a two-step, long-form merger, finding the merger improper because of a lack of business purpose. The case did not address the issue of the exclusiveness of the appraisal remedy in a short-form merger, and was a marked departure from the view Delaware courts have taken as to short-form mergers in regard to the exclusivity of the appraisal remedy. See *Stauffer* v. *Standard Brands, Inc.,* 41 Del. Ch. 7, 187 A.2d 78 (1962); *Bruce* v. *E. L. Bruce Co.,* 40 Del. Ch. 80, 174 A.2d 29 (1961). Policy considerations presented by short-form mergers are substantially different from those presented by long-form mergers. It is reasonable to treat the two situations differently, as in a short-form merger minority shareholders are never more than 10 percent of the aggregate, while in the long-form merger minority shareholders can own as much as one-third and in some cases 49 percent of the company stock. The *Singer* case, moreover, has not gone without substantial criticism. See Borden, "Some Comments on *Singer* v. *Magnavox*," 178 N.Y. L.J. 66 (1977); note, "Going Private, etc.," 10 Conn. L. Rev. 511 (1978).

that the appraisal remedy is merely an alternative and not an exclusive remedy; and *Berkowitz* similarly was an action brought pursuant to a statute; N.J. Stat. annot. § 14A:10-1 (West); which does not provide that appraisal is an exclusive remedy.

We find ourselves in agreement with the views of those courts and commentators who have interpreted an exclusive appraisal remedy to mean exactly what it says: that, as to the fact of the merger and claims addressed to it, a shareholder is entitled only to payment of the value of his shares in accordance with the procedures established by General Statutes §§ 33-373 and 33-374. *Hubbard* v. *Jones & Laughlin Steel Corporation*, 42 F. Sup. 432 (W.D. Pa. 1941); *Stauffer* v. *Standard Brands, Inc.*, 41 Del. Ch. 7, 187 A.2d 78 (1962); *Joseph* v. *Wallace-Murray Corporation*, 354 Mass. 477, 238 N.E.2d 360 (1968); *Beloff* v. *Consolidated Edison Co. of New York*, 300 N.Y. 11, 87 N.E.2d 561 (1949); see 13 Fletcher, Corporations (Rev. Perm. Ed. 1970) § 5906.3; Cross, Corporation Law in Connecticut § 8.6 (1972); 19 Am. Jur. 2d, Corporations, §§ 1541-45; Manning, "The Shareholder's Appraisal Remedy," 72 Yale L.J. 223, 246n (1962). We thus hold that, with respect to the plaintiff's claims relating to the merger itself, the trial court did not err in concluding that the plaintiff was limited to a statutory right of appraisal, and, accordingly, in sustaining the defendants' first motion for summary judgment. The claims relating to the merger itself, stated in count three of the complaint, i.e., that the merger was effectuated without corporate purpose and with the intent to deprive the plaintiff of his shares, did not, in view of the exclusivity of the appraisal rights statute, state a claim upon which relief could be granted.

## II

We next address the issue whether the trial court was correct in sustaining the defendants' motion for summary judgment as to counts one, three and four of the complaint, on the ground that these counts stated only derivative claims and could only be brought by one who, unlike the plaintiff, was a shareholder of Mallard acting on behalf of Mallard at the time of suit.

A distinction must be made between the right of a shareholder to bring suit in an individual capacity as the sole party injured, and his right to sue derivatively on behalf of the corporation alleged to be injured. See 13 Fletcher, op. cit. (Rev. Perm. Ed. 1970) §§ 5908, 5911. Generally, individual stockholders cannot sue the officers at law for damages on the theory that they are entitled to damages because mismanagement has rendered their stock of less value, since the injury is generally not to the shareholder individually, but to the corporation— to the shareholders collectively. 3A Fletcher, op. cit. (Rev. Perm. Ed. 1975) § 1282; see 13 Fletcher, op. cit. (Rev. Perm. Ed. 1970) §§ 5907–38. In this regard, it is axiomatic that a claim of injury, the basis of which is a wrong to the corporation, must be brought in a derivative suit, with the plaintiff proceeding "secondarily," deriving his rights from the corporation which is alleged to have been wronged. Id. § 5908; 19 Am. Jur. 2d, Corporations §§ 524–27; see annots., 36 A.L.R.2d 1345, 1351; 59 A.L.R. 1099; see also *Barrett* v. *Southern Connecticut Gas Co.*, 172 Conn. 362, 374 A.2d 1051 (1977). It is, however, well settled that if the injury is one to the plaintiff as a stockholder, and to him individu-

ally, and not to the corporation, as where an alleged fraud perpetrated by the corporation has affected the plaintiff directly, the cause of action is personal and individual. 13 Fletcher, op. cit. § 5911; 19 Am. Jur. 2d, Corporations § 525; see *Eisenberg* v. *Flying Tiger Line, Inc.*, 451 F.2d 267 (2d Cir. 1971); *Mansfield Hardwood Lumber Co.* v. *Johnson*, 263 F.2d 748 (5th Cir. 1959); *Traylor* v. *Marine Corporation*, 328 F. Sup. 382 (E.D. Wis. 1971); *Forbes* v. *Wells Beach Casino, Inc.*, 307 A.2d 210 (Me. 1973); *Fishkin* v. *Hi-Acres, Inc.*, 341 A.2d 95 (Pa. 1975).[9] In such a case, the plaintiff-shareholder sustains a loss separate and distinct from that of the corporation, or from that of other shareholders, and thus has the right to seek redress in a personal capacity for a wrong done to him individually. *Eisenberg* v. *Flying Tiger Line, Inc.*, supra; 19 Am. Jur. 2d, Corporations § 525; see *Jones* v. *H. F. Ahmanson & Co.*, 1 Cal. 3d 93, 460 P.2d 464 (1969); *E. K. Buck Retail Stores* v. *Harkert*, 157 Neb. 867, 62 N.W.2d 288 (1954).

[9] For example, where a sole minority stockholder, such as the plaintiff, is the victim of a fraud perpetrated by the sole controlling stockholder, such as the defendant Teal, the injury, and the action for redress, cannot be said to belong merely to the corporation. If the controlling majority stockholder seeks to injure the minority stockholder through the means of looting the corporation or so wrecking it that the minority stockholder would get nothing out of his assets, the claim resulting therefrom is sufficient to constitute an individual action. *Davis* v. *United States Gypsum Co.*, 451 F.2d 659, 662 (3d Cir. 1971); *Fidelis Corporation* v. *Litton Industries, Inc.*, 293 F. Sup. 164, 168–69 (S.D. N.Y. 1968); 13 Fletcher, Corporations (Rev. Perm. Ed. 1970) § 5911; comment, "The Shareholders 'Individual' Suit," 38 Yale L.J. 965 (1929). Likewise, where an injury sustained to a shareholder's stock is peculiar to him alone, and does not fall alike upon other stockholders, the shareholder has an individual cause of action. *Empire Life Ins. Co. of America* v. *Valdak Corporation*, 468 F.2d 330, 335 (5th Cir. 1972); *Buschmann* v. *Professional Men's Assn.*, 405 F.2d 659, 661–63 (7th Cir. 1969); *Sutter* v. *General Petroleum Corporation*, 28 Cal. 2d 525, 530, 170 P.2d 898 (1946); 13 Fletcher, op. cit. §§ 5913, 5921.

The trial court found that all of the claims stated in counts one, three and four of the complaint were derivative in nature. We cannot agree. Count one, as noted earlier, states nineteen individual transactions which the plaintiff alleged to be unfair and undisclosed to him, which put into issue the looting of Mallard by Gentry. Such claims—of looting the corporation and of failure of the directors to disclose important facts concerning corporate transactions—state personal, as opposed to derivative, causes of action. *Traylor* v. *Marine Corporation,* 328 F. Sup. 382 (E.D. Wis. 1971); *Heit* v. *Tenneco, Inc.,* 319 F. Sup. 884 (D. Del. 1970); *Braasch* v. *Goldschmidt,* 199 A.2d 760 (Del. Ch. 1964). In count four, the plaintiff alleged that Gentry, in his capacity as officer and director of Mallard and Teal, took advantage of special facts concerning Mallard's financial condition, which he failed to disclose to the plaintiff, and that Gentry caused the merger to deprive the plaintiff of his shares and to avoid paying the plaintiff their full fair market value. The plaintiff, in effect, via counts one and four, alleged that both defendants dismantled Mallard step-by-step, transaction-by-transaction, depriving Mallard *and* the plaintiff of income and assets. These allegations claim a pervasive breach of the fiduciary duty owed by the corporate majority to the sole minority stockholder. The rule of corporation law and of equity invoked is well-settled: the majority has the right to control, but when it does so, it occupies a fiduciary relationship toward the minority, as much as the corporation itself or its officers and directors. *Pepper* v. *Litton,* 308 U.S. 295, 311, 60 S. Ct. 238, 84 L. Ed. 281 (1939); 13 Fletcher, Corporations (Rev. Perm. Ed. 1970) § 5810; see *Katz Corporation* v. *T. H. Canty & Co.,*

168 Conn. 201, 207, 362 A.2d 975 (1975); *Osborne* v. *Locke Steel Chain Co.,* 153 Conn. 527, 534, 218 A.2d 526 (1966); *Klopot* v. *Northrup,* 131 Conn. 14, 21, 37 A.2d 700 (1944). As pleaded, these causes of action are based upon alleged unlawful acts relating solely to the stock owned by the plaintiff, in violation of the fiduciary duty owed the plaintiff by the defendants, and they thus state individual, and not derivative, claims. *Jones* v. *H. F. Ahmanson & Co.,* supra; *Crain* v. *Electronic Memories & Magnetics Corporation,* 50 Cal. App. 3d 509, 123 Cal. Rptr. 419 (1975); 13 Fletcher, op. cit. § 5915; see comment, "The Fiduciary Relation of the Dominant Shareholder to the Minority Shareholders," 9 Hastings L.J. 306, 314 (1958).

Nor does the fact of the Teal-Mallard merger prohibit the plaintiff from proceeding in an individual capacity against Teal and Gentry. The provisions of § 33-369 (e) of the General Statutes clearly state that the post-merger, surviving corporation shall be responsible for the liabilities, including liability to dissenting shareholders, of each of the merging corporations, and that any claim existing at the time of merger against one of the corporations may be prosecuted as if the merger had not taken place. Put another way, the merger does not destroy the existing liabilities and obligations of the individual corporations; to hold otherwise would depart from the clear mandate of the statute and allow for perpetration of a fraud upon corporation creditors or others who, like the plaintiff, possess outstanding claims against the merged corporation. See *Connecticut Co.* v. *New York, N.H. & H. R. Co.,* 94 Conn. 13, 24, 107 A. 646 (1919); Cross, Corporation Law in Connecticut § 8.6 (1972) (shareholder not prevented from attacking directors for breach

of fiduciary duty antecedent to the transaction). We thus conclude that the trial court erred in sustaining the defendants' second motion for summary judgment. There exist key issues of material fact as to the liability of both defendants in the plaintiff's personal cause of action against them, as stated in counts one and four of the complaint, which demand fuller treatment upon remand.[10] *Ardoline* v. *Keegan*, 140 Conn. 552, 555, 102 A.2d 352 (1954); see *Town Bank & Trust Co.* v. *Benson*, 176 Conn. 304, 309, 407 A.2d 971 (1978).

## III

Little remains for discussion with respect to count two of the complaint. In this count, the plaintiff alleged a breach of duty by the defendants to Mallard, as opposed to himself, on account of most of the transactions described as unfair in count one, and additionally claimed that the merger was without purpose and intended to exclude the plaintiff. So much of the count as attacks the merger itself is foreclosed by our disposition in part I in regard to count three. As to the allegations concerning the purported injury to Mallard occasioned by the merger, however, additional comment is required.

The trial court held that the allegations contained in count two stated a derivative cause of action, and could only be pursued by one who was a stockholder in Mallard both at the time of the alleged corporate delict and at the time of the filing of suit. We agree. Count two alleged as its primary claim an injury to

---

[10] Our holding in part I that the claims of wrongdoing stated in count three of the complaint *as to the merger itself* are barred because of the exclusivity of the statutory appraisal remedy does not, in view of the provision of General Statutes § 33-369 (e), preclude the plaintiff from proceeding against the defendants on the basis of claims antecedent to and unrelated to the merger.

Mallard, pursued by the plaintiff on behalf of Mallard. To establish his right to bring an action on behalf of Mallard, the plaintiff was required to allege and prove that he had maintained his status as a shareholder in the corporation for whose benefit he purported to sue, from the time the alleged improper acts occurred, continuously and uninterruptedly until after the judgment in the case was rendered. *Braasch* v. *Goldschmidt*, 199 A.2d 760 (Del. Ch. 1964); *Gresov* v. *Shattuck Denn Mining Corporation*, 40 Misc. 2d 569, 243 N.Y.S.2d 760 (1963); *Sorin* v. *Shahmoon Industries, Inc.*, 20 Misc. 2d 149, 191 N.Y.S.2d 14 (1959); Ballantine, Corporations § 148 (1946); see annots., 172 A.L.R. 512, 168 A.L.R. 906. The logic of this "continuous ownership" requirement is apparent: a plaintiff may not seek to vindicate the rights of a corporation of which he is not a shareholder, or, as in the present case, which has ceased to exist. Although the issue is not one entirely free from doubt; see *Smallwood* v. *Pearl Brewing Co.*, 489 F.2d 579, 591 n.12 (5th Cir. 1974); we are persuaded that the court was correct in characterizing count two as derivative in nature, and in sustaining the defendants' motion for summary judgment addressed to that count on the ground that the plaintiff lacked capacity to pursue the derivative cause of action.

There is no error as to counts two and three; as to counts one and four there is error, the judgment as to those counts is set aside, and the case is remanded for further proceedings not inconsistent with the views expressed in this opinion.

In this opinion the other judges concurred.