[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These stockholders' derivative actions are before the court on the defendants' motions to strike. The plaintiffs in the two actions, Stanley Ferber Associates, Robert Strougo and Stephen Gravereaux, allege on their own behalf and on behalf of an asserted class of similarly situated owners of the common stock of defendant Northeast Bancorp, Inc. ("Northeast") that they were damaged as a result of wrongful conduct by Northeast and its directors, defendants Frank G. Kuger, Jr., Peter V. Young, George R. Kabureck, O. Haydn Owens, Jr., Harlan E. Anderson, Gino P. Giusti, Robert E. Ix, Kenneth A. Randall, Audrey M. Sargent, Robert H. Sorenson, R. Chapman Taylor, III, and Paul E. Waggoner, in connection with the acquisition of Northeast by CT Page 9984 defendant First Fidelity Bancorporation ("Fidelity") in a merger consummated on May 4, 1993.
Northeast and its directors have moved to strike the amended complaints on the ground that 33-373 and -374 C.G.S. provide the exclusive remedy to dissenting stockholders upon a corporate merger and the further ground that no cause of action may be asserted because the shareholders ratified the merger by vote.
Fidelity has moved to strike the plaintiffs' claims against it as failing to state a cause of action for aiding and abetting the defendant directors in a breach of fiduciary duty.
The amended complaint is not divided into separate counts addressed to the various defendants but consists of an undifferentiated narrative in numbered paragraphs.
Standard for Motion to Strike
In reviewing a motion to strike a claim asserted in a complaint, a court must take the facts to those alleged in the amended complaint, construed in a manner most favorable to the pleader. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170 (1988); Amodio v. Cunningham, 182 Conn. 80, 82 (1980); Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 472 (1980); Stradmore Development Corp. v. Commissioner, 164 Conn. 548, 550-51 (1973).
The plaintiffs' amended complaint must be carefully parsed. Though twelve directors of Northeast are named as defendants, three of them, Frank J. Kugler, Jr., Peter V. Young, and George R. Kabureck, are also referred to in the allegations of the complaint as "the individual defendants" (Para. 11). The plaintiffs limit some allegations only to these three "individual defendants." The plaintiffs allege that pursuant to an agreement dated December 28, 1992, Northeast was acquired, effective May 4, 1993, by Fidelity for approximately $29 million.
The complaint alleges that Northeast's stockholders received $4.00 per share, an amount they allege was less than the closing price per share on the day before the transaction was announced, and less than half the amount they allege was offered by an earlier bidder, Shawmut National Corporation (A24).
The amended complaint alleges that the transaction with Northeast contained a provision requiring Fidelity to pay fourteen of Northeast's executives, including defendants Kugler, Young and Kabureck, CT Page 9985 approximately triple their salaries if they lost their positions as a result of the merger, a so-called "golden parachute" clause that resulted, three days after the merger, in termination and eligibility for payments to about half the fourteen executives, including defendant Kugler (Para. 34).
The amended complaint alleges that Kugler, Young and Kabureck breached their fiduciary duty as directors by 1) failing to disclose to Northeast's shareholders that they were endorsing Fidelity's offer because it provided them with "golden parachutes" (Para. 4); 2) insisting on the provision of "golden parachutes" as a condition of the merger; (Paras. 3, 30); 3) acting as the sole negotiators in the transaction despite the conflict of interest created by the "golden parachute" clause. (Para. 33); 4) agreeing in the merger agreement to an option known as a "lock-up" program that granted Fidelity the right to purchase at a fixed price and required Northeast to buy back all or part of that stock, in essence creating a penalty clause. (Para. 38); 5) agreeing to a covenant in the merger agreement that Northeast would not solicit or encourage any other offer, even a more lucrative one, after entering into the merger agreement with Fidelity (Para. 37).
The plaintiffs allege that Northeast and the other directors (not just those three denominated as the "individual defendants") breached their fiduciary duties to shareholders in the following ways: 1) by failing to disclose to shareholders that the individual defendants were endorsing the merger with Fidelity because of the promise to them of golden parachutes (Para. 4; 2) by adopting in 1990 a shareholder rights plan designed to impede any acquisition offer that did not win the approval of Northeast's management; 3) "conspiring to insert" in the merger agreement a requirement that Northeast pay Fidelity $4 million if Northeast withdrew, without any corresponding penalty to Fidelity if it withdrew, disadvantaging Northeast if a better offer had been made by another bidder (Para. 37).
As to Fidelity, the plaintiffs allege that the defendants knew that the "individual defendants" would breach their fiduciary duties by agreeing to allow Northeast to be acquired by First Fidelity for inadequate compensation and substantially assisted that breach of duty by agreeing to go forward with the acquisition and taking steps toward its consummation "and thereby" aided and abetted the breach of fiduciary duties by the individual defendant Para. 44)
I. Claim of Appraisal as Exclusive Remedy
The above recitation of the plaintiffs' claims against the variously CT Page 9986 categorized defendants makes it clear that two types of harm are alleged: 1) failure of Northeast's directors to achieve the best offer of value for shareholders and 2) self-dealing by the defendants Kugler, Young and Kabureck, also are alleged to have violated their fiduciary obligations by seeking that benefited them personally at the expense of the shareholders.
The defendants urge that 33-373 and -74 C.G.S. provide the exclusive remedy for both types of claimed harm, that the plaintiffs' only remedy is the procedure prescribed by those statutes, and that this action may not maintained. The plaintiffs claim that their allegations of self-dealing and non-disclosure state claims beyond the ambit of the appraisal provisions.
Section 33-373(c) C.G.S. provides that any shareholder of a merging corporation who objects to the merger shall have the right to be paid value of all his shares in accordance with the provisions of 33-374. The statute provides that an objecting shareholder may make written demand the corporation purchase his shares at fair value. If the shareholder and disagree as to what constitutes fair value, the shareholder may the Superior Court to find or approve an appraiser to find fair value order such compensation to be paid.
The Connecticut Supreme Court has had occasion to consider the of the appraisal procedure just once, in Yanow v. Teal Industries, Inc.,178 Conn. 262 (1979). The plaintiff in that case was a ten percent shareholder of a company, Mallard Manufacturing Co., that was acquired by Teal Industries, Inc., which the Court described as owning and controlling the operations of Mallard, 178 Conn. at 265. Yanow brought claims both derivatively and individually claiming that a director of Mallard who was also a director of Teal had breached his fiduciary duties both to Mallard and to Yanow personally in connection with the merger itself and in connection with some transactions that preceded the merger. The Supreme Court affirmed the granting of summary judgment as to the counts challenging the merger itself, holding that the statutory appraisal procedure was the exclusive remedy as to the merger and claims related to the merger, including the claim of failure to make full disclosure to stockholders. The Court set aside the judgment with respect to claims against the directors for breach of fiduciary duty, both before and in connection with the merger, finding that such claims were asserted by Yanow individually and not as a derivative action on behalf of Mallard, in which he had failed to prove the continuous stock ownership held to be required to assert a derivative claim. CT Page 9987
This reversal of the judgment as to some counts of the complaint does not, however, signal that a derivative action for breach of fiduciary duty in connection with the merger could have been maintained had Yanow established his standing to bring such a claim on behalf of the corporation. The Court noted that Yanow, as a ten percent stockholder, was able to assert an individual claim that Teal and Mallard were trying to force him out, a loss "separate and distinct from that of the corporation, or from that of other stockholders"178 Conn. at 282. In the case now before the Court, the plaintiffs assert no such individual claim, but only a derivative claim of diminished stock value undifferentiated from the situation of stockholders as a whole.
Even as to the count in which Yanow asserted individual claims, however, the Supreme Court found that those parts of it that attacked the merger itself were foreclosed by the Court's conclusion that appraisal was the exclusive remedy. 178 Conn. 285. The Supreme Court in Yanow explicitly declined to adopt the approach of other courts, including the courts of Delaware, holding that appraisal was not the exclusive remedy as to claims arising from a short form merger.
The plaintiffs assert that the holding of Yanow applies only to short form mergers and does not apply where, as here, a long form merger is at issue. Indeed, the Supreme Court in that case emphasized that it was dealing with the statutory scheme set forth at 33-370 C.G.S., allowing a corporation that owned ninety percent of the shares of its subsidiary to merge with that subsidiary a vote of approval, and, in fact, over the disapproval of the shareholders of the subsidiary corporation, 178 Conn. at 271-2. In that the Court approved the view that "[t]his side of state policy is based a recognition that a substantial majority of the corporation's share power has endorsed the transaction. In fairness to the majority, and to business itself, the transaction should be allowed to proceed, unimpeded by collateral condemnation of the interests of a minority of dissenting shareholders."178 Conn. at 272-3, citing Cross, Corporation Law Connecticut in 8.6, p. 436 (1972).
The court in Yanow, in discussing the fact that other states provide appraisal as the exclusive remedy only as to short form mergers, observed that "[p]olicy considerations presented by short-form mergers are substantially different from those presented by long-form mergers. It is reasonable to treat the two situations differently, as in a short-form merger minority shareholders are never more than 10 percent of the aggregate, while in the long-form merger minority shareholders can own as much as one-third and in some cases 49 percent of the company stock." 178 Conn. 279, n. 8. This agreement that there may be a CT Page 9988 policy reason for other states to differentiate between short form and long form mergers in their statutory schemes regarding the remedies available to minority shareholders does not, however, constitute a finding that the Connecticut legislature had similarly restricted the exclusivity provision to short form mergers, and a long form merger was not at issue in Yanow.
In the only other Connecticut case on point, Judge Jacobson stated that in a long form merger appraisal pursuant to 33-373 and 374 is likewise the exclusive remedy. Voltarc Tubes, Inc. v. Sauska,2 CSCR 829, 830 (1987).
Examination of the texts of 33-373 and -374 reveals no basis for allowing the plaintiffs as to the long form merger at issue to assert a claim that the Court in Yanow said could not be asserted as to a short form merger. The texts of 33-373 and -374, make no distinction as to the form of the merger, nor are they, on their face, restricted to mergers of the kind described in 33-370. The statutory provision for appraisal does not follow 33-370 C.G.S., which describes short term mergers, but follows the provisions applicable to long form mergers, set forth at 33-371 C.G.S., suggesting that the appraisal remedy applies to both types of merger.
Courts cannot read into clearly expressed legislation provisions which do not find expression in its words. Local 218 Steamfitters Welfare Fund v. Cobra Pipe Supply Coal Co., 207 Conn. 639, 645 (1988); Houston v. Warden, 169 Conn. 247, 251 (1975). Courts are bound to interpret legislative intent by referring to what the legislative text contains, not by what it might have contained; Schurman v. Schurman,188 Conn. 268, 273 (1982); nor can court: engraft language not clearly intended by its enactment into legislation; Local 218 Steamfitters, id.; Zapata v. Burns, 207 Conn. 496, 503-4 (1988).
Sections 33-374 and -374 are not, by their terms, confined in their operation to short form mergers, and no exception is stated as to claims arising from a merger governed by 33-371. Neither the case law cited by the plaintiffs from other states with different statutory limitations nor dicta in Voltarc Tubes, Inc., supra, supplies a justification for ignoring the principles of statutory construction set forth above.
The Connecticut Supreme Court has unambiguously construed 33-373 and -374 as supplying the exclusive remedy for shareholders with regard to mergers even where claims of breach of fiduciary duty related to the merger transaction are asserted. Finding that the statutes do not differentiate between short form and long form mergers, this court finds CT Page 9989 that the motion to dismiss must be granted as to all such claims.
The cited statutes are not, however, the exclusive remedy as to the only claimed breach of fiduciary duty not related to the merger agreement and its provisions, that is, the enactment in 1990 of a shareholder's rights clause, and the motion to strike that claim is denied.
II Ratification
Because of the court's ruling on the claim of exclusivity of the appraisal remedy, it is not necessary to reach this additional ground asserted by the defendants.
III Claims against Fidelity
The entire claim against defendant Fidelity is stated in the following paragraph of the amended complaint:
 44. First Fidelity knew that the individual defendants would breach their fiduciary duties by agreeing to allow Northeast to be acquired by First Fidelity for inadequate consideration, and substantially assisted that breach of duty by agreeing to go forward with its acquisition and taking steps towards its consummation. In this manner, First Fidelity aided and abetted the breach of fiduciary duties by the individual defendants.
Fidelity has moved to strike the complaint for failure to state a claim. Fidelity's first stated ground for dismissal is that where there is no actionable claim against the fiduciary, a non-fiduciary cannot be subject to a claim of aiding and abetting. The only claim against Northeast and the defendant directors that has survived is the claim of breach of fiduciary duty with regard to enactment of the shareholders' rights provision in 1990. The plaintiffs' claims against Fidelity do not assert any participation by Fidelity as to that subject matter. Rather, the gravamen of the plaintiffs' complaint against Fidelity, as stated above, appears to be that it made a merger offer that it knew or should have known that Northeast's directors should not have accepted.
Where no cause of action can be asserted against the fiduciary for a breach of his fiduciary duty, no cause of action is stated against an entity that is alleged to have aided and abetted such a breach. State Teachers Retirement Board v. Fluor Corp., 566 F. Sup. 939, 944
(S.D.N.Y. 1982). CT Page 9990
It would be illogical to hold that statutory appraisal is the exclusive remedy for a shareholder dissatisfied with the effect of the terms of the merger in the value of his stock yet hold that an entity with no independent fiduciary duties to the shareholder is subject to liability for aiding and abetting. The purpose of the appraisal procedure is to give the shareholder fair value for his stock, curing the effect of any asserted deficiencies in the merger transaction.
Even if 33-373 and -374 C.G.S. were not construed as the exclusive remedy for all aspects of the merger resulting in the claimed undervaluing of a shareholder's stock, the allegations against Fidelity are insufficient to state of cause of action for aiding and abetting a breach of a fiduciary duty. Where, as here, (and like the situation in Cumis Insurance Society Inc. v. Windsor Bank Trust Co., 736 F. Sup. 1226,1234-1235 (D Conn. 1990)), the alleged aider and abetter has no independent fiduciary duty to the plaintiff shareholders, plaintiffs must allege 1) a breach of duty by the party who does owe them a fiduciary duty; 2) knowledge by the aider that the fiduciary is breaching a duty, and 3) provision by the alleged aider of substantial assistance in the wrongdoing by the fiduciary. Atlantic Shipping Corp. v. Chemical Bank, 818 F.2d 240, 251 (2d Cir. 1987); Armstrong v. McAlpin, 699 F.2d 79, 91 (2d Cir. 1983); Edwards Hanly v. Wells Fargo Securities Clearance Corp., 602 F.2d 478, 484 (2d Cir. 1979), cert. denied, 444 U.S. 1045 (1980).
The plaintiffs do not allege that Fidelity knew the offered consideration for the merger to be inadequate or that Fidelity knew that the Northeast directors considered it to be inadequate and agreed to it because it provided golden parachutes for some directors and others, nor that it knowingly completed the transaction with the purpose of aiding and abetting a breach. See Cumis supra, at 1235.
The only "substantial assistance" alleged is that Fidelity completed the merger transaction with Northeast. If the mere entering into the transaction were seen to constitute aiding and abetting a breach of fiduciary duty, then every arm's length offeror would be subject to liability for motivations on the other side of the transaction of which the offeror had neither control nor knowledge. Fidelity had a duty to its own shareholders to pursue aggressively a transaction economically favorable to itself, not to shield Northeast's shareholders from the consequences of their own directors' decisions. See Grumman Allied Industries, Inc. v. Rohr Industries, Inc., 748 F.2d 729, 739 (2d Cir. 1984); Terrydale Liquidating Trust v. Barness, 611 F. Sup. 1006
(D.C.N.Y. 1984). As the district court stated in Terrydale, supra, CT Page 9991 at 1030, ". . . to impose affirmative liability on a purchaser in a commercial transaction without concrete evidence of both its knowledge of the self-interest or bad faith of the seller and its unavoidable awareness of the transaction's substantive unfairness or lack of business purpose would disrupt commercial activity in a manner wholly inconsistent with the purposes of aider and abetter liability."
While a golden parachute may indeed be an attractive feature to directors of a troubled bank, the complaint alleges that this provision applied only to three of the twelve directors, and an inference of fiduciary breach by the directors as a group is therefore not warranted.
The plaintiffs' cryptic, undetailed and conclusory pleading against Fidelity does not set forth the facts sufficient to state a cause of action, and on this additional ground, it is dismissed.
Conclusion
The motions to strike of Northeast and defendants Kugler, Young, Kabureck, Giusti, Owens, Anderson, IX, Randall, Sargent, Sorenson, Taylor and Waggoner are granted, in both cases, as to all claims except that concerning the enactment of a shareholders, rights provision in 1990. The motion to strike of First Fidelity Bank corporation is granted in both cases as to all claims against it.
Beverly J. Hodgson, Judge of the Superior Court