## ROBERT BRANDT ET AL. *v.* TRAVELERS CORPORATION ET AL.

Superior Court          Judicial District of          File No. 529891S
Hartford-New Britain at Hartford

Memorandum filed January 10, 1995

*Hurwitz & Sagarin,* for the named plaintiff et al.

*Cummings & Lockwood* and *Day, Berry & Howard,* for the named defendant et al.

BERGER, J. In September, 1993, Robert Brandt, the named plaintiff, and approximately thirty-eight other individuals and institutions, all shareholders of the

defendant Travelers Corporation (Travelers), filed this action challenging the merger of Travelers with the defendant Primerica Corporation (Primerica).[1] The plaintiffs argued, inter alia, that the merger was dictated by Primerica resulting in an inadequate offer and that the directors approved such offer only to further their individual interests. Specifically, in paragraphs sixty-seven and sixty-eight of their consolidated amended complaint, they stated: "67. The defendants are carrying out a preconceived plan and scheme to thwart a fair and open auction of the Company that would maximize shareholder value at the expense of plaintiffs and the other members of the class. They are engaged in a conspiracy and are substantially and knowingly aiding and abetting each other in carrying out this unlawful scheme.

"68. In sum, the defendants failed and are failing to:

"(a) perform their fiduciary duty of candor;

"(b) act to obtain the highest possible price for share-holders, the Company's equitable owners;

"(c) act independently so that the interests of Travelers' public stockholders would be protected; and

"(d) adequately ensure that no conflicts of interest exist between defendants' own interest and their fiduciary obligation to maximize stockholder value or, if such conflicts exist, to ensure that all conflicts would be resolved in the best interest of Travelers' public stockholders to whom they [owe] overriding fiduciary duties."

The plaintiffs have asked this court to enjoin the merger (which would have resulted in the surrender of

---

[1] The merger, which was publicly announced on September 23, 1993, was approved by over 95 percent of the shareholders of Travelers who voted at a special meeting of shareholders held on December 30, 1993, and the surviving corporation is known as "The Travelers, Inc."

each share of their old Travelers' stock in exchange for 0.80423 of a share of Primerica stock) or, alternatively, in the event the merger was consummated, to award damages against individual directors of both companies for the alleged breaches of their fiduciary duties.

The defendants, Travelers and its individual directors, and Primerica and its individual directors, have filed a motion to strike this action arguing that the plaintiffs' sole remedy for contesting the merger is the appraisal procedure set forth in General Statutes §§ 33-373 and 33-374. The defendants argue further that the action against Primerica for aiding and abetting the alleged breaches of fiduciary duty must also fail as no claim can be made against Travelers.

"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) *Novametrix Medical Systems, Inc.* v. *BOC Group, Inc.,* 224 Conn. 210, 214–15, 618 A.2d 25 (1992). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Id., 215. The motion "admits all facts well pleaded." *Ferryman* v. *Groton,* 212 Conn. 138, 142, 561 A.2d 432 (1989).

The legislature has set forth the operative procedures for corporate mergers in chapter 599, part IX, of the General Statutes, entitled Fundamental Changes. Section 33-373 discusses the rights of objecting shareholders: "(c) Any shareholder of a merging or consolidating domestic corporation who objects to the merger or consolidation shall have the right to be paid the value of all shares of such corporation owned by him in accordance with the provisions of section 33-374, except that a shareholder of a merging domestic corporation which is to be the surviving corporation shall

have such right only: (1) If and to the extent that the plan of merger will effect an amendment to the certificate of incorporation of the surviving corporation which would entitle the shareholder to such right pursuant to the provisions of subsection (a) of this section, or (2) if the plan of merger provides for the distribution to shareholders of the surviving corporation of cash, securities or other property in lieu of or in exchange for or upon conversion of outstanding shares of the surviving corporation. . . .

"(f) Where the right to be paid the value of shares is made available to a shareholder by this section, such remedy shall be his exclusive remedy as holder of such shares against the corporate transactions described in this section, whether or not he proceeds as provided in section 33-374."

The defendants thus maintain that, as the plaintiffs complain about the merger between Travelers and Primerica, the remedy of appraisal as set forth in § 33-374 is exclusive and precludes any other action. This court agrees.

In *Yanow* v. *Teal Industries, Inc.*, 178 Conn. 262, 422 A.2d 311 (1979), the plaintiff sought to nullify a merger alleging breach of fiduciary duty and, as in the present case, argued that the statutory appraisal remedy was not the exclusive remedy. The Supreme Court reviewed the history of Connecticut's corporate legislation concerning mergers and shareholders' rights in comparison to other jurisdictions. The court noted that: "Professor Bayless Manning, the principal author of Connecticut's current statute, describes the statutory appraisal as 'unusually explicit in making the remedy exclusive.' " Id., 274–75. The court in *Yanow* discussed and rejected the argument that the appraisal procedure was not exclusive. That argument, similar to the one made in the present case, was premised on the application of

case law from other jurisdictions allowing claims for charges of fraud or illegality when not specifically precluded by statute. The court in *Yanow* rejected that theory and held that: "We find ourselves in agreement with the views of those courts and commentators who have interpreted an exclusive appraisal remedy to mean exactly what it says: that, as to the fact of the merger and claims addressed to it, a shareholder is entitled only to payment of the value of his shares in accordance with the procedures established by General Statutes §§ 33-373 and 33-374." Id., 280. The court stated further that: "The claims relating to the merger itself . . . i.e., that the merger was effectuated without corporate purpose and with the intent to deprive the plaintiff of his shares, did not, in view of the exclusivity of the appraisal rights statute, state a claim upon which relief could be granted." Id.

Two recent Superior Court decisions involving dissenting shareholders' actions to mergers have followed the *Yanow* rule. See *Stanley Ferber & Associates* v. *Northeast Bancorp, Inc.*, Superior Court, judicial district of New Haven, Docket Nos. 344932 and 344931 (November 17, 1993) (10 Conn. L. Rptr. 388); *Voltarc Tubes, Inc.* v. *Sauska*, Superior Court, judicial district of Fairfield, Docket No. 239520 (July 10, 1987) (2 C.S.C.R. 829). In *Stanley Ferber & Associates* v. *Northeast Bancorp, Inc.*, supra, 390, the court, *Hodgson, J.*, granted a motion to strike allegations identical to those in the present case stating that "[t]he Connecticut Supreme Court has unambiguously construed §§ 33-373 and 33-374 as supplying the exclusive remedy for shareholders with regard to mergers even where claims of breach of fiduciary duty related to the merger transaction are asserted. Finding that the statutes do not differentiate between short form and long form mergers, this court finds that the motion to dismiss must be granted as to all such claims." The court also addressed and

rejected the claim, which is made in the present case, that *Yanow* only applied to short form mergers.[2] The court noted that the relevant statutes make no distinction between short form and long form mergers and are not restricted to short form mergers. Id., 390. *Voltarc Tubes, Inc.* v. *Sauska*, supra, 2 C.S.C.R. 829, addressed similar issues and also held that §§ 33-373 and 33-374 provided the shareholders' exclusive remedy in a long form merger.

It is clear to this court that *Yanow* controls the present case. The facts there are essentially the same as those in the present matter with the one exception that *Yanow* involved a short form merger. For the purposes of §§ 33-373 and 33-374, that deviation is a difference without distinction. The legislature did not distinguish between short form and long form mergers in these sections and, as the court observed in *Stanley Ferber & Associates* v. *Northeast Bancorp, Inc.*, supra, 10 Conn. L. Rptr. 390: "Courts cannot read into clearly expressed legislation provisions which do not find expression in its words. *Local 218 Steamfitters Welfare Fund* v. *Cobra Pipe Supply & Coal Co.*, 207 Conn. 639, 645 [541 A.2d 869] (1988); *Houston* v. *Warden*, 169 Conn. 247, 251 [363 A.2d 121] (1975). Courts are bound to interpret legislative intent by referring to what the legislative text contains, not by what it might have contained; *Schurman* v. *Schurman*, 188 Conn. 268, 273 [449 A.2d 169] (1982); nor can courts engraft language not clearly

---

[2] Short form merger statutes "authorize the merger of a subsidiary into its parent without a vote of any of the shareholders if the parent owns a specified percentage, usually 90 or 95 percent, of the shares of the subsidiary. . . . The purpose of such statutes is patently to provide the parent corporation with a means of eliminating the minority shareholders' interest in the enterprise." 15 W. Fletcher, Cyclopedia Corporations (Perm. Ed. 1990) § 7046.10.

In Connecticut, a short form merger is a merger in which the minority shareholders own less than 10 percent of the aggregate outstanding shares. *Yanow* v. *Teal Industries, Inc.*, supra, 178 Conn. 279 n.8. General Statutes § 33-370 provides that a corporation owning at least 90 percent of the outstanding shares may effect a merger without approval by a vote of the shareholders.

intended by its enactment into legislation; *Local 218 Steamfitters [Welfare Fund* v. *Cobra Pipe Supply & Coal Co.,* supra, 645]; *Zapata* v. *Burns,* 207 Conn. 496, 503–504 [542 A.2d 700] (1988)."

The plaintiffs argue that, notwithstanding the specific language of the statute and the aforementioned cases, this court should follow *Weinberger* v. *UOP, Inc.,* 457 A.2d 701 (Del. 1983). The Supreme Court of Delaware in *Weinberger* held that "[t]he appraisal remedy . . . may not be adequate in certain cases, particularly where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching are involved." Id., 714; see also *Cede & Co.* v. *Technicolor, Inc.,* 634 A.2d 345 (Del. 1993); *In re Tri-Star Pictures, Inc., Litigation,* 634 A.2d 319 (Del. 1993); *Rabkin* v. *Philip A. Hunt Chemical Corp.,* 498 A.2d 1099 (Del. 1985). As noted by both parties, a number of other jurisdictions have adopted this policy. Connecticut, however, has not. See *Yanow* v. *Teal Industries, Inc.,* supra, 178 Conn. 275. Indeed, the court in *Yanow* stated: "Reference to the statutes and interpretative cases of other jurisdictions, moreover, must proceed, if at all, with caution, circumspection and restraint. Appraisal remedy statutes differ greatly among jurisdictions, and the extent to which the availability of a right of appraisal precludes a dissenting shareholder from pursuing, as to the merger, other relief, depends upon the precise wording of the appraisal remedy statute." Id., 277.

The Delaware statute does not contain the exclusive remedy provision found in Connecticut's statute. Del. Code Ann. tit. 8, § 262 (1993); cf. General Statutes § 33-373. Moreover, although *Yanow* was decided in 1979, for fifteen years the legislature has chosen not to amend the relevant statutes to allow an exception to the appraisal remedy for suits alleging fraud. As the Supreme Court stated in *White* v. *Burns,* 213 Conn.

307, 333, 567 A.2d 1195 (1990), "we presume that the legislature is aware of our interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation." (Internal quotation marks omitted.) If the legislature wanted to provide an exception for allegations of fraud or other fiduciary wrongdoing, that was certainly within its power. It, however, has not done so.

One final aspect must still be addressed. In 1994, the legislature did amend the corporate legislation in an extensive bill known as the Connecticut Business Corporation Act (act), Public Acts 1994, No. 94-186, effective January 1, 1997. This legislation is essentially a wholesale revision to the existing corporate statutory framework. Of significant interest to the present case are §§ 147 through 160 of the act, which concern shareholders' rights in the event of a merger. Section 148 provides in relevant part: "(a) A shareholder is entitled to dissent from, and obtain payment of the fair value of his shares in the event of, any of the following corporate actions . . . (2) Consummation of a plan of share exchange to which the corporation is a party as the corporation whose shares will be acquired, if the shareholder is entitled to vote on the plan . . . (5) Any corporate action taken pursuant to a shareholder vote to the extent the articles of incorporation, bylaws, or a resolution of the board of directors provides that voting or nonvoting shareholders are entitled to dissent and obtain payment for their shares. (b) Where the right to be paid the value of shares is made available to a shareholder by this section, such remedy shall be his exclusive remedy as holder of such shares against the corporate transactions described in this section, whether or not he proceeds as provided in sections 147 to 160, inclusive, of this act." Public Acts 1994, No. 94-186, § 148.

Once again, the legislature adopted a provision limiting appraisal rights as the exclusive remedy. There is

no section in the new legislation allowing claims based on fraud and other wrongdoings. The Supreme Court has stated that "[a] subsequent legislative act may throw light on the legislative intent of a former related act." *Hartford* v. *Suffield*, 137 Conn. 341, 346, 77 A.2d 760 (1950). There is certainly no change in the exclusive remedy rule.

This court, of course, is mindful of the interpretation rule that "[w]here the language of a statute is clear and unambiguous, reference to its history and purpose is unnecessary." *State* v. *Johnson*, 227 Conn. 534, 542, 630 A.2d 1059 (1993). The legislative history, however, serves to highlight the clarity and specificity of the new statutory language. Section 148 (b) of Public Acts 1994, No. 94-186 uses the same language as Substitute House Bill No. 5712 and although the legislative debate contains no specific discussion on § 148 (b), there is mention of a commentary to the act. For instance, Representative Richard D. Tulisano stated: "I also wanted to put on the record that there are in fact commentaries that have been established which help one interpret this act, both at the Connecticut commentary and there is commentary to the model act that people should look to for reference and understanding of the intent of the drafters of the legislation. I also ought to be very honest that I have not read all of those, nor do I necessarily agree with all of those commentaries and for whatever that means for legislative purposes, certainly the proponents of the bill would like that to be looked at. It is probably the normal way of interpreting the legislation. In the future, it's the way the [Uniform Commercial Code] was done and it's probably the way it should be done here." 37 H.R. Proc., Pt. 18, 1994 Sess., p. 6446.

The commentary referred to by Tulisano is that prepared and submitted by the Connecticut Bar Association and others. It is the Model Corporate Act with

additions and corrections. For each section relevant to the issues here, all language allowing consideration of equitable circumstances and allowing dissenting shareholders to obtain supplemental relief, including all references to the principles set forth in *Weinberger* v. *UOP, Inc.*, supra, 457 A.2d 701, and its progeny (including specific references thereto) were specifically rejected and deleted from the draft versions of Public Acts 1994, No. 94-186.

The Connecticut legislature has clearly rejected the *Weinberger* rule. "There is no more elementary rule of statutory construction than that the intention which the legislature has expressed must govern." *State ex rel. Rourke* v. *Barberi*, 139 Conn. 203, 207, 91 A.2d 773 (1952). In the present case, that expressed legislative intent is very clear. Travelers' motion to strike is, therefore, granted.

The Primerica defendants have also moved to strike the allegations that they aided and abetted the Travelers' defendants. Inasmuch as these claims all stem from the merger, the exclusive appraisal remedy also bars these claims. See *Stanley Ferber & Associates* v. *Northeast Bancorp, Inc.*, supra, 10 Conn. L. Rptr. 391.

For the aforementioned reasons, the defendants' motions to strike are granted.